UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br>　　　　Plaintiff,<br>　　v.<br>RYAN KELLY CHAMBERLAIN,<br>　　　　Defendant. | Case No. 14-cr-00316-VC-1<br><br>**ORDER DENYING MOTION TO DISMISS COUNTS THREE AND FOUR OF THE SECOND SUPERSEDING INDICTMENT**<br><br>Re: Dkt. No. 102 |

Defendant Ryan Kelly Chamberlain has been charged with one count of possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d); one count of possession of a firearm with the serial number removed, in violation of 18 U.S.C. § 922(k); one count of possession of a biological toxin for use as a weapon, in violation of 18 U.S.C. § 175(a); and one count of possession of a toxin, in violation of 18 U.S.C. § 175(b). Chamberlain moves to dismiss counts three and four of the second superseding indictment, i.e. the charges under 18 U.S.C. §§ 175(a) and (b), on the grounds that: (1) sections 175(a) and (b) are unconstitutionally vague on their face and as applied; (2) Congress exceeded its authority in enacting section 175(b); and (3) Chamberlain's prosecution under sections 175(a) and (b) violates *Bond v. United States*, 134 S. Ct. 2077 (2014). Chamberlain's motion is denied.

**I.**

The Fifth Amendment does not permit the conviction of a defendant under a criminal statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citing *Kolender v. Lawson,* 461 U.S. 352, 357-358 (1983)). But a person "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to

the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)). For that reason, in evaluating a vagueness challenge to a law that does not implicate the First Amendment, a court must consider only "whether a statute is vague as applied to the particular facts at issue." *Id.* at 18; *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."). This is an objective standard: the question is whether a person of ordinary intelligence would have had fair notice that the conduct alleged was proscribed by the statute, not whether the defendant himself had actual notice of the illegality of his conduct. *See Humanitarian Law Project*, 561 U.S. at 20-21.

There could well be prosecutions under either subsection that would present serious vagueness issues. In particular, section 175(b) has language that's difficult to understand. But as applied to this case, section 175(b) gives a person of ordinary intelligence fair notice that it is illegal to knowingly possess as many as two thousand lethal doses of abrin in the form of crushed rosary pea powder without a peaceful purpose, as the government alleges Chamberlain did. *See Johnson*, 135 S. Ct. at 2556; § 175(b). And section 175(a) gives a person of ordinary intelligence fair notice that it is illegal to possess abrin for use as a weapon, as, again, the government alleges Chamberlain did. *See Johnson*, 135 S. Ct. at 2556; § 175(a). Nor has Chamberlain shown that either subsection seriously "encourages arbitrary or discriminatory enforcement" against a particular group or groups of people. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1156 (9th Cir. 2014); *cf. id.* (striking down a city ordinance that applied to all drivers but was selectively enforced against the homeless). Sections 175(a) and 175(b) are therefore not unconstitutionally vague as applied to Chamberlain's alleged conduct.

## II.

"The Federal Government . . . 'can exercise only the powers granted to it,' including the power to make 'all Laws which shall be necessary and proper for carrying into Execution' the enumerated powers." *Bond*, 134 S. Ct. at 2086 (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 405 (1819); U.S. Const., Art. I, § 8, cl. 18). Congress has the power to make laws "necessary and

2

proper" for carrying into execution the federal government's enumerated "power to make treaties." *Id.* at 2087 (citing U.S. Const., Art. II, § 2, cl. 2).

As Chamberlain recognizes, 18 U.S.C. §§ 175(a) and (c) were originally enacted in 1990 to implement an international treaty, the Biological Weapons Convention of 1972. *See* Biological Weapons Anti-Terrorism Act of 1989, Pub. L. No. 101-298, § 2, 104 Stat. 201 (1990). Section 175(b) was added later, as part of the USA PATRIOT Act of 2001. Pub. L. No. 107-56, 115 Stat. 272 (2001). Chamberlain asserts that although sections 175(a) and (c) were a valid exercise of Congress's treaty power, section 175(b) is not.

The Convention expresses a general goal "to exclude completely the possibility of bacteriological (biological) agents and toxins being used as weapons." Preamble, Convention on the Prohibition of the Development, Production and Stockpiling of Bacteriological (Biological) and Toxin Weapons and on their Destruction, April 10, 1972, 26 U.S.T. 583, 1015 U.N.T.S. 163. To achieve that goal, the Convention requires countries that are parties to the treaty not only to refrain from developing, producing, stockpiling, or otherwise acquiring or retaining biological toxins themselves (except as justified by "prophylactic, protective or other peaceful purposes," *id.* art. I), but also, to "take any necessary measures to prohibit and prevent the development, production, stockpiling, acquisition or retention of . . . [biological] toxins" within each country's "territory, . . . jurisdiction[,] or under its control anywhere." *Id.* art. IV. The Convention thus apparently contemplates that preventing the development, production, stockpiling, acquisition, or retention of biological toxins by private parties as well as by government entities will serve the broader international goal of eliminating the use of such toxins as weapons.

Congress could reasonably have concluded section 175(b), like section 175(a), was necessary and proper to effectuate the Convention's requirement that the United States take measures to prohibit and prevent the development, production, stockpiling, acquisition, or retention of biological toxins within its borders. And Congress did not need to cite the Convention in enacting section 175(b), because "[t]he 'question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2598 (2012) (quoting *Woods v. Cloyd W. Miller Co.*,

3

333 U.S. 138, 144 (1948)). Moreover, it's reasonable to assume Congress intended to act pursuant to its treaty power, since, after all, it was amending a statute that was indisputably an exercise of its power to execute the Convention. Nor should it matter that section 175(b) was adopted later in time, particularly given the long-term nature of the goals of the Convention. Overall, given the nexus between the conduct criminalized in section 175(b) and the goals of the Convention, Congress did not exceed its authority in enacting that provision.

### III.

"A criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.'" *Bond*, 134 S. Ct. at 2086 (quoting *United States v. Fox*, 95 U.S. 670, 672 (1878)). But it remains an open question whether Congress may proscribe purely local conduct in executing its treaty power, or whether doing so would impermissibly intrude on the police power of the states. *See id.* at 2087, 2089. Therefore, under *Bond*, absent "a clear indication that Congress meant to reach purely local crimes," courts should interpret criminal statutes enacted pursuant to the treaty power as being limited to addressing only those federal or international dangers that are the objectives of the particular international convention at issue. *Id.* at 2090; *see id.* at 2090-91.

It is possible that sections 175(a) and (b), broadly construed, could be used to prosecute entirely local conduct without a nexus to a federal or international concern, and that such prosecution would raise the unsettled question *Bond* declined to address. This is not that case: Chamberlain's conduct, as alleged, does not present an "unusual" federal prosecution of a "purely local crime[]." *Bond*, 134 S. Ct. at 2093, 2090. The government asserts that Chamberlain possessed between one and two thousand lethal doses of abrin. The government further notes that the Secretary of Health and Human Services has designated abrin as a toxin with "the potential to pose a severe threat to public health and safety." 42 C.F.R. § 73.3. And the government alleges that Chamberlain concurrently possessed an improvised explosive device loaded with shrapnel, which, if proven, would support the inference he intended significant harm to a large number of people. Unlike in *Bond*, where the government prosecuted a woman who used legally obtained,

common caustic chemicals to cause a minor burn to her husband's lover's thumb, prosecuting Chamberlain for allegedly obtaining a large quantity of abrin is not comparable to treating a "local assault with a chemical irritant as the deployment of a chemical weapon" in international warfare. 134 S. Ct. at 2093.  Because "[t]he Federal Government undoubtedly has a substantial interest in enforcing criminal laws against . . . acts with the potential to cause mass suffering," including "the possession of extremely dangerous substances with the potential to cause severe harm to many people," construing sections 175(a) and (b) to reach Chamberlain's conduct as alleged is consistent with *Bond*.  134 S. Ct. at 2092.

**IT IS SO ORDERED.**

Dated: August 27, 2015

_____
VINCE CHHABRIA
United States District Judge